**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICK STILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 09-cv-4000 |
| | ) | |
| INTERNATIONAL BIORESOURCES, LLC | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit, Plaintiff, Patrick Stiles ("Stiles"), alleges that Defendant, International BioResources, LLC ("IBR" or "the company"), violated the Illinois common law tort of retaliatory discharge by terminating his employment in response to his repeated internal complaints that the company was violating safety protocols. The Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.

Before the Court is Defendant's motion to dismiss Plaintiff's complaint [12] for failure to state a claim upon which relief can be granted, which Defendant brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant's motion maintains that the Illinois Whistleblower Act (740 ILCS 174/1-174/35) ("IWA" or "the Act") preempts the common law tort of retaliatory discharge in whistleblower cases. For the reasons stated below, Defendant's motion [12] is denied.

1

**I.     Background**[1]

In July 2003, IBR hired Stiles to work as a Physician's Substitute at its Aurora, Illinois blood plasma collection center. His employment concluded (for the first time) in February 2004, when IBR closed the Aurora facility. Compl. ¶ 5. In August 2006, after IBR decided to reopen the Aurora location, the company rehired Stiles as the site's Center Manager—a job which came with more responsibilities than his previous position. Compl. ¶ 6.

After he was rehired, Stiles informed IBR that the Aurora facility was violating various safety protocols that apply to blood plasma centers, including protocols promulgated by the Food and Drug Administration ("FDA"). Compl. ¶ 8. In the latter part of 2006, during a staff meeting in Rockford, Illinois, Stiles complained about violations of FDA-mandated training protocols. Soon thereafter, he sent an e-mail to IBR's Vice President of Operations, Jerome Parnell, stating that members of the Aurora staff lacked proper training and that the Aurora Physician's Substitute did not have corporate approval to perform her duties. Compl. ¶¶ 9-10. Subsequently, Stiles informed IBR management that the company's computerized Donor Maintenance System ("DMS") was outdated. He also informed management that IBR lacked an effective program for segregating the plasma of eligible and ineligible donors, including those who might have serious diseases like HIV. Finally, in May or early June 2007, Stiles told IBR that its Springfield, Illinois facility was accepting donors who were homeless, in violation of FDA protocols. Compl. ¶¶ 11-14.

Soon thereafter, IBR informed Stiles that in July 2007, the FDA would conduct an inspection of the Aurora facility, which needed a passing mark to sell plasma to pharmaceutical firms. Stiles alleges that in preparing for the audit, IBR engaged in unlawful activities, including

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A*., 507 F.3d 614, 618 (7th Cir. 2007).

falsifying documents, hiding files, and instructing Aurora employees to disregard standard operating procedures because the DMS could not generate desired reports. Compl. ¶¶ 15-16.

Immediately after the (successful) audit, Stiles told three IBR managers, including Scott Ramsey, IBR Vice President of Unlicensed Centers, that the company had falsified records and deceived the FDA in order to pass inspection. In response, Parnell called Stiles on the telephone. Parnell told Stiles that the company had not lied to the FDA, and he ordered Stiles to apologize to Ramsey for his remarks. Stiles refused; the company fired him. Compl. ¶¶ 17-20.

In his complaint, Stiles alleges that the company terminated him because of his repeated complaints about IBR's alleged safety violations. He claims the company's actions violated public policy, jeopardizing the safety of public by compromising the safety of the blood supply.

## II. Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S.

at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

The federal notice pleading regime applies in federal courts, even when the parties are litigating a state cause of action. Illinois is a fact-pleading jurisdiction, which means that "a plaintiff must allege facts * * * to establish his or her claim as a *viable* cause of action." *Napleton v. Village of Hinsdale*, 891 N.E.2d 839, 845 (Ill. 2008) (emphasis added). Accordingly, a plaintiff in Illinois state court must state her allegations with "specificity," by "factually setting forth the elements necessary to state a cause of action." *People ex. rel Scott v. Coll. Hills Corp.*, 435 N.E.2d 463, 467 (Ill. 1982). Not so in federal court: "Rule 8(a)'s notice pleading standard applies to * * * state law claims that are litigated in federal court" (*Christensen v. County of Boone, Illinois*, 483 F.3d 454, 459 (7th Cir. 2007)), because the Federal Rules of Civil Procedure apply to cases filed in federal court. See *Hanna v. Plumer*, 380 U.S. 460, 473 (1965) ("*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules.").

**III. Analysis**

In Illinois, the default rule is that an employee serves at the will of her employer, who may discharge her "for any reason, or no reason" at all. *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877 (Ill. 1994); *Fellhauer v. City of Geneva*, 568 N.E.2d 870 (Ill. 1991). The common-law tort of retaliatory discharge is a "limited and narrow" exception to employment at-will. *Turner v. Mem'l Med. Ctr*, 911 N.E.2d 369, 374 (Ill. 2009); *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 356-57 (Ill. 1978) (first recognizing the tort of retaliatory discharge); see also

4

*Callahan v. Edgewater Care & Rehabilitation*, 872 N.E.2d 551, 552 (Ill. App. Ct. 2007) (tracing the development of the tort). To prove retaliatory discharge, an employee must show that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy. *Turner*, 911 N.E.2d at 374; *Fellhauer*, 568 N.E.2d at 875; *Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354, 1356 (Ill. 1985); *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 879-80 (Ill. 1981). In stating an exception to the general rule of at-will employment, the tort of retaliatory discharge "seeks to achieve 'a proper balance * * * among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out.'" *Fellhauer*, 568 N.E.2d at 876 (quoting *Palmateer*, 421 N.E.2d at 878). Under Illinois common law, the retaliatory-discharge tort is available to a person whose whistleblowing leads to the termination of his or her employment. *Palmateer*, 421 N.E.2d at 879-80.

The primary question in this case is whether, in light of a recently enacted Illinois statute, a whistleblower still may bring a common-law retaliatory-discharge action. On January 1, 2004, the Illinois Whistleblower Act (740 ILCS 174/1-174/35) ("IWA" or "the Act") took effect. Pursuant to the Act, "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15. The Court concludes that the Illinois Supreme Court would be unlikely to hold that the Act abrogates common-law whistleblower actions. Defendant's secondary arguments have been forfeited at the motion to dismiss phase because those arguments were raised only in Defendant's reply brief. Accordingly, Defendant's motion to dismiss must be denied in its entirety.

## A. The IWA Does Not Abrogate Common Law Whistleblower Actions

Defendant's chief argument is that the IWA codifies and therefore "preempts" the whistleblower category of the common-law tort of retaliatory discharge. (For the sake of ease, the Court will refer to this category of the tort as a "whistleblower action.") Therefore, Defendant maintains, the IWA prohibits common-law claims based on reporting illegal or improper activity to anyone *other than* a government or law enforcement official. However, Defendant's "codification and therefore preemption" argument is not the test that Illinois courts apply, and it thus misses the mark.

As an initial matter, the parties and several courts have used the term preemption in presenting the issue in this case, but the precise question raised by Defendant's motion is whether the more recent enactment *abrogates* the common-law claim. The term preemption generally refers to doctrines surrounding the questions of whether and when a law at one level of government must give way because it comes lower in the pecking order than a law promulgated by a different level of government—most often a state law giving way to federal law under the United States Constitution's Supremacy Clause. See, *e.g.*, *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (preemption doctrine is derived from the Supremacy Clause); *Vill. of Frankfort v. Illinois E.P.A.*, 852 N.E.2d 522, 529-30 (Ill. App. Ct. 2006); see also *Vill. of Orland Hills v. Citizens Utilities Co. of Ill.*, 807 N.E.2d 590, 597 (Ill. App. Ct. 2004) (state law preemption of municipal law). To preempt means that one body of law takes precedence over another body of law (Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE 682-83 (2d ed. 1995) (term typically refers to Congress making "an entire subject matter so as to make it inherently federal")), whereas to abrogate means "to abolish * * * by formal or authoritative

action" (*id.* at 9). The question in this case is whether the IWA abrogates common-law whistleblower actions.[2]

Because this is a diversity case governed by Illinois law, the Court must answer that question based on how the Illinois Supreme Court would likely rule on the issue. *Baltzell v. R&R Trucking Co.*, 554 F.3d 1124, 1130 (7th Cir. 2009). The Illinois Supreme Court has not addressed whether and to what extent the IWA abrogates common-law whistleblower actions, and the courts of this district have not reached uniform outcomes on the issue. Compare *Riedlinger v. Hudson Respiratory Care, Inc.,* 478 F. Supp. 2d 1051, 1054 (N.D. Ill. 2007) (Norgle, J.) (preemption/abrogation), and *Jones v. Dew,* 2006 WL 3718053, at *3 (Moran, J.) (same), with *Bridges v. McDonald's Corp.*, 2009 WL 5126962, at *4 (N.D. Ill. Dec. 21, 2009) (Dow, J.) (no preemption/abrogation); *Creighton v. Pollmann N. Am., Inc.*, 2008 WL 5377816, at *6 (N.D. Ill. Dec. 18, 2008) (Kendall, J.) (same); *Kennedy v. Aventis Pharm., Inc.*, 2008 WL 4371323, at *4 (N.D. Ill. Feb. 11, 2008) (Kennelly, J.) (same); *Washington v. Ass'n for Individual Dev.*, 2009 WL 3616453, at *4-5 (N.D. Ill. Oct. 29, 2009) (Darrah, J.) (same), and *Lizak v. Great Masonry, Inc.,* 2009 WL 855952, at *1-2 (N.D. Ill. Mar. 30, 2009) (Coar, J.) (same).

The critical provision in the IWA states: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). The only Illinois court to face the issue of whether the IWA abrogates common-law whistleblower actions concluded that the IWA does not

---

[2] The parties' apparent confusion in framing the issue is understandable given that courts are not always consistent in their usage of the descriptive terminology, as reflected in the reported cases. See, *e.g.*, *Nickels v. Burnett*, 798 N.E.2d 817, 823 (Ill. App. Ct. 2003) (discussing state statutory "preemption" of state common law); *Perfection Carpet, Inc. v. State Farm Fire and Cas. Co.*, 630 N.E.2d 1152, 1153 (Ill. App. Ct. 1994) (same).

abrogate the common law. In *Callahan v. Edgewater Care & Rehabilitation*, 872 N.E.2d 551 (Ill. App. Ct. 2007), the Illinois Appellate Court held that the IWA does not "preempt" common-law whistleblower actions where the employee reports violations to his employer rather than government officials. Although the Illinois Appellate Court does not have the final word on the meaning of state law, the Seventh Circuit has indicated that the Appellate Court's opinions are entitled to deference: "The decisions of the Illinois Appellate Court are persuasive authority. Although those decisions do not bind us, we shall follow them unless we have a compelling reason to believe that they have stated the law incorrectly." *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004).

Indeed, based on the law that Illinois courts apply in cases dealing with abrogation of common-law rights, there are compelling reasons to think that *Callahan* reaches the correct conclusion. The *Callahan* Court noted first that the IWA does not expressly abrogate common-law rights and observed that "[r]epeal or preemption of an existing common-law remedy by implication is not favored." *Id.* at 554 (citing *Shore v. Senior Manor Nursing Ctr., Inc.*, 518 N.E.2d 471 (Ill. App. Ct. 1998); see also *Barthel v. Ill. Cent. Gulf. R.R. Co.*, 384 N.E.2d 323, 327 (Ill. 1978) (courts will "read nothing * * * by intendment or implication" into statutes in derogation of the common law). Although the *Callahan* Court noted that abrogation by implication may occur where the preexisting right is so "repugnant" to a statutory scheme that it would "deprive the statute of its efficacy and render its provisions nugatory," the court concluded that no such repugnance was evident in that case. *Callahan*, 872 N.E.2d at 554. *Callahan*'s analysis appears to be spot-on.

Whether a statute impliedly preempts or repeals another statutory or a common-law action is a question of legislative intent. See *Elliot v. Univ. of Ill.*, 6 N.E.2d 647, 649 (Ill. 1937);

8

*Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 856 N.E.2d 460, 466-67 (Ill. App. Ct. 2006) (legislative intent is the "paramount consideration" in determining whether one statute impliedly repeals another statute); *Goodknight v. Piraino*, 627 N.E.2d 1163, 1166 (Ill. App. Ct. 1993); *DuPage County v. Harris*, 231 N.E.2d 195, 198 (Ill. App. Ct. 1967). The clearest way for a legislature to express its intent is the language that it adopts. *Gallagher v. Union Square Condo. Home Owners Ass'n*, 922 N.E.2d 1201, 1205-1206 (Ill. App. Ct. 2010); see also *Matter of Udell*, 18 F.3d 403, 410 n.1 (7th Cir. 1994) (Flaum, J., concurring) (the plain language of a statute is no mere canon, but the "large-bore howitzer of statutory construction").

Indeed, not only is the plain language of a statute the best evidence of legislative intent, Illinois courts apply a clear-statement rule when it comes to abrogation of common-law rights. That is, Illinois courts follow the related canons of construction that statutes in derogation of the common law are strictly construed and that statutes that abrogate the common law must be clear in their intention to do so. *Williams v. Manchester*, 888 N.E.2d 1, 10 (Ill. 2008) ("[A] statute in derogation of the common law cannot be construed as changing the common law beyond what the statutory language expresses or is necessarily implied from what is expressed."); *Gallagher*, 922 N.E.2d at 1206 (legislative intent to abrogate the common law must be "clearly and plainly expressed"); *Perbix v. Verizon N., Inc.*, 919 N.E.2d 1096, 1104 (Ill. App. Ct. 2009) (statutes in derogation of the common law are construed in favor of the person whose common-law interests are affected by the statute); *Heider v. Knautz*, 919 N.E.2d 1058, 1065-66 (Ill. App. Ct. 2009) (common-law right to revoke oral arbitration agreements survives statute making arbitration agreements enforceable and generally irrevocable); *Zuccolo v. Hannah Marine Corp.*, 900 N.E.2d 353, 359 (Ill. App. Ct. 2008) (existence of federal maritime remedy does not preempt state tort remedy); *Kubian v. Alexian Bros. Med. Ctr.*, 651 N.E.2d 231, 235 (Ill. App. Ct. 1995)

(Illinois Wrongful Death Act does not supplant loss of consortium actions); *Shores v. Senior Manor Nursing Ctr., Inc.*, 518 N.E.2d 471, 474-76 (Ill. App. Ct. 1988) (no implied abrogation of whistleblower actions under Illinois' Nursing Home Care Reform Act); *Lites v. Jackson*, 387 N.E.2d 1118, 1119 (Ill. App. Ct. 1978) ("[T]he common law is not to be deemed abrogated by statute unless it appears clearly that such was the legislative intent."); see also *Pasquantino v. United States*, 544 U.S. 349, 358 (2005) (statutes that "invade the common law" should be "read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident"); *United States v. Bestfoods*, 524 U.S. 51, 62-63 (1998) ("In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law" (alteration omitted).).

In this case, the IWA does not contain language that expressly abrogates common-law whistleblower actions. The only question, then, is whether abrogation is necessarily implied by the statute. See *Knautz*, 919 N.E.2d 1058, 1065 (Ill. App. Ct. 2009); *People v. Shick*, 744 N.E.2d 858, 863 (Ill. App. Ct. 2001). The answer to that question is a resounding no. The statute and the common-law action cover distinct subjects (although they may overlap). The IWA covers "retaliation"—that is, a class of activity broader than retaliatory discharge (see 740 ILCS 174/15)—when an employer reports legal violations to government officials. See *Kennedy*, 2008 WL 4371323, at *5 ("The common meaning of 'retaliate' includes all sorts of adverse action other than termination."). In contrast, the tort covers only firings, whether the underlying complaints were made to government officials or the employer. See *Palmateer*, 421 N.E.2d at 879; *Washington*, 2009 WL 3616453, at *5. And the tort does not necessarily cover situations where an employee is fired for refusing to take unlawful activity—protection that the statute affords. Compare *Fellhauer*, 568 N.E.2d at 876 (no retaliatory discharge action by employee

dismissed for not taking unlawful actions requested by mayor), with 740 ILCS/174-20. There is no conflict between the statutory scheme and the common-law action, at least in this case,[3] because the IWA and the common-law action can exist side-by-side. Because Stiles did not report illegal activity to government officials, the IWA does not come into play. And pursuing a common law action suggests only the IWA's inapplicability to the case at hand—*i.e.*, that the IWA does not apply, rather than that there is a conflict between the statute and the common law. Where Illinois courts have found schemes inconsistent with one another, there was an actual collision. For example, in *State v. Mikusch*, 562 N.E.2d 168, 171 (Ill. 1990), the Illinois Supreme Court concluded that there was a conflict between an act that prohibited mandatory retirements before the age of 70 and another statute that mandated retirement for vehicle inspectors at the age of 60. In the absence of a conflict or some other showing that the common-law tort is "repugnant" to the statute, the Court will respect the well established rule in Illinois and "not infer a change in the law not expressed by the General Assembly." *Tomczak v. Planetsphere*, 735 N.E.2d 662, 667 (Ill. App. Ct. 2000).

In reaching this conclusion, the Court respectfully disagrees with opinions reached by two other courts in this district. In *Jones v. Dew*, 2006 WL 3718053 (N.D. Ill. Dec. 13, 2006), and *Riedlinger v. Hudson Respiratory Care, Inc.*, 478 F. Supp. 2d 1051 (N.D. Ill. 2007), the courts concluded that the IWA abrogated common-law whistleblower actions. *Riedlinger* relied primarily on *Jones*, and *Jones* relied primarily on *Sutherland v. Norfolk S. Ry. Co.*, 826 N.E.2d 1021, 1026 n. 4 (Ill. App. Ct. 2005). In *Sutherland*, the court stated in a footnote that "the 'whistleblower' cause of action has since been codified in the Whistleblower Act." But this

---

[3] The matter could be different if a whistleblower were fired after reporting illegal activities to a government official. But those are not the facts here, and the Court need not reach the question of whether, in some cases, the IWA and common-law whistleblower actions would come into conflict. See also *infra* note 4.

Court is hesitant to read too much into that statement for at least a couple of reasons. First, the statement made in *Sutherland* occurred in a passing reference in a footnote. What is more, *Sutherland* did not involve an action under the IWA or involve the question of abrogation, indicating that the court's observation might best be viewed as stray dictum that was not oriented toward the abrogation issue. As Judge Kennelly put it, the brief mention in *Sutherland* "can hardly be called a conclusion that the statutory claim is coextensive with the common law tort." *Kennedy*, 2008 WL 4371323, at * 4. The upshot of these observations is that, in this Court's view, reading *Sutherland* as a pronouncement on the question of abrogation would be a mistake—"codification and therefore preemption" simply is not the law. As discussed above, courts in Illinois apply the well-established rule that abrogation of the common law by statute must be express or necessarily implied. The court in *Sutherland* did not engage in that analysis, and its passing reference should not be read as having constituted a casual attempt to do so.

Finally, the Court observes that cases in which courts have found common-law whistleblower actions to have been abrogated by the IWA appear to both misapply and misread the legislative history. Again, courts will conclude that a statute abrogates a common-law action only when the statute expressly abrogates the common-law right or when abrogation is necessarily implied by the statute. Thus, to the extent that legislative history is useful it can only be useful on the question of whether abrogation is necessarily implied. (After all, even though legislative history may be useful in clarifying ambiguity in a statute, by definition it cannot furnish the statute with unambiguous language.) Thus, the Court respectfully disagrees with the premise underlying the conclusion in *Jones* that the legislative history indicated an intention to abrogate the common-law whistleblower tort: because Illinois courts generally require a clear statement, the legislative history cannot furnish the plain language that Illinois courts require. Of

course, it is possible that, by sketching out the intended operation of a statute, legislative history could be useful in determining whether abrogation is necessarily implied by ambiguous language in a statute. *Solon v. Midwest Med. Records Ass'n, Inc.*, 925 N.E.2d 1113, 1119 (Ill. 2010) (in ascertaining the meaning of ambiguous statutory language, it is appropriate to use extrinsic materials including legislative history under Illinois law). But the parties have not drawn to the Court's attention any ambiguities in the IWA.

In any event, the legislative history in this case bolsters the conclusion that there is no conflict between the statute and common law (or at least that none was intended). The *Jones* Court reviewed the history: "The House bill sponsor stated his belief that there was no cause of action for retaliatory discharge stemming from disclosing a violation of law to the authorities, and * * * '[c]ommon sense would tell you that you should have that protection and this law would codify that." *Jones*, 2006 WL 3718053, at *3 (quoting IL H.R. Trans. 2003 Reg. Sess. No. 63). Far from evincing an intention to abrogate existing rights, the quotation runs the other way. Creating a new right where none existed[4]—complaining to government officials as opposed to employers—evinces an intention to expand protections for whistleblowers, not contract them. See also *Callahan*, 872 N.E.2d at 634 (reviewing the same legislative history cited in *Jones* and concluding that "nothing in the language of the statute or its legislative history even suggests that the legislature intended to repeal or preempt the common-law rights of an individual discharged for reporting illegal activities to her superiors"). The quotation yields the meaning that Defendant desires only if one reads into the quotation the "codification and therefore preempted" trope that is not the law in Illinois. After reviewing the legislative history

---

[4] As it happens, the legislator's statement appears to have been incorrect. The seminal *Palmateer* case itself dealt with retaliatory discharge based on statements made to law enforcement, and there the Illinois Supreme Court held that the plaintiff could maintain a whistleblower action. See *Palmateer*, 421 N.E.2d at 879 (The claim is that he was discharged for supplying information to a local law-enforcement agency * * *.").

cited in *Jones*, the Court agrees that none of the statements by legislators indicated an intention to occupy the field of whistleblower actions or otherwise constrict the rights of whistleblowers.

In sum, after applying the traditional tools of statutory construction that Illinois courts employ when analyzing whether a statute abrogates a common-law cause of action, the Court concludes that the Illinois General Assembly's enactment of the IWA did not abrogate the tort of retaliatory discharge in whistleblower cases. Accordingly, Defendant's motion to dismiss on that ground is denied.

### B. Defendant's Secondary Arguments were Forfeited

Defendant raises two arguments for the first time in its reply brief—that whistleblower actions may not be maintained based on solely internal complaints and that Stiles cannot show that his discharge violated a clear mandate of public policy. Because the arguments were not presented in Defendant's motion to dismiss or his accompanying memorandum of law—and thus Plaintiff had no opportunity to address the arguments in his response brief—the arguments have been forfeited at the motion to dismiss phase. See, *e.g.*, *United States v. Boisture*, 563 F.3d 295, 299 (7th Cir. 2009).

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [12] is denied.

Dated: July 12, 2010

_____
Robert M. Dow, Jr.
United States District Judge